IN THE MATTER OF THE ESTATE OF JESSE S. HULSE, DECEASED.

*Will — when an estate vests — when a legacy lapses.*

A testator directed that the income of his residuary estate should be paid to his wife Sarah J. Hulse " during her natural life. If she should have heirs of my body they to be supported and educated out of it, and at the age of twenty-one years to have one-half of the property, and at the death of the said Sarah J. the remainder. And I further direct that if, at the death of my wife Sarah J., there should be no heirs of 'my body living, that I bequeath the proceeds of the real estate to Nathan Emmet Hulse and Charles S. Hulse (equally), sons of my brother Silas Hulse." A posthumous child was born of the wife, who attained the age of twenty-one years, and thereafter and on June 21, 1865, died without issue. Nathan Emmet Hulse died July 17, 1864, after the son had become of age. The widow died April 29, 1884. Upon an application by the administrators of Nathan to recover one-half of the fund:

*Held,* that the application was properly denied upon the ground that the legacy had lapsed.

*Semble,* that the whole estate vested in' the son upon his attaining the age of twenty-one years, the actual possession of one-half being postponed until the death of the widow. (Per BARNARD, P. J.)

APPEAL from an order of the surrogate of Orange county, dismissing an application made by the administrators of Nathan Emmet Hulse, deceased.

Jesse S. Hulse died May 15, 1844, leaving a last will, dated January 17, 1844, which was admitted to probate by the surrogate of Orange county August 20, 1844. The provisions of said will relating to the disposition of the testator's property are as follows :

*First.* " I give and bequeath unto my beloved wife, Sarah J. Hulse, all my personal property for her own benefit, except a large eight-day brass clock, which, in default of my having heirs of my own body, I bequeath at her death to Nathan Emmet Hulse, son of my brother Silas Hulse. I further direct that the executors of this will may, at their discretion, and they are hereby empowered to dispose of the farm on which the tavern and store-house is situated ; also the house, lot and tannery adjoining ; also a lot of thirteen acres known as the Neely lot, all situate in Smith village, town of Minisink, county of Orange, the proceeds to be placed at interest and disposed of as follows, viz : My beloved wife, Sarah J., to have

the proceeds during her natural life, if she should have heirs of my body, they to be supported and educated out of it, and at the age of twenty-one years to have one-half of the property, and at the death of the said Sarah J. the remainder. And I further direct that if at the death of my wife Sarah J. there should be no heirs of my body living, that I bequeath the proceeds of the real estate to Nathan Emmet Hulse and Charles S. Hulse (equally), sons of my brother Silas Hulse."

He appointing his said wife and Benjamin Horton and John E. Dubois executors.

His wife Sarah J. was *enciente* at the date of the will, and on the 13th day of June, 1844, twenty-nine days after the testator's death, she had a son, an heir of the testator's body, who lived to be twenty-one years of age and died June 21, 1865, leaving his mother, said Sarah J., his only heir and next of kin. Said Nathan Emmet Hulse died July 17, 1864, and said Sarah J., widow of said testator, died April 29, 1884, having had no other child except said son, who was named Smith Hulse. On the 7th day of February, 1866, the executors under said will settled their account before the surrogate of Orange county, having previously sold the real estate, realizing therefrom $3,000. Charles S. Hulse, as administrator of said Nathan Emmet Hulse, claimed that the bequest or provision in his favor was a vested one and did not lapse by his intestate's death, demanded its payment out of the estate of said Sarah J., and applied to the surrogate for a direction to that effect. His application was denied by the surrogate upon the ground that the legacy had lapsed.

*Nanny & Mead*, for Charles S. Hulse, administrator, appellant.

*B. R. Champion*, for F. H. Reeves, administrator, respondent.

*H. A. Wadsworth*, for John E. Dubois, executor, respondent.

BARNARD, P. J.:

As to one-half of the estate there seems to be no real question. Jesse S. Hulse died in 1844 leaving a will. The fund derived from certain lands was to be held by the executors, and the proceeds paid to his widow during her life. "If she should have heirs of my body they to be supported and educated out of it, and at the age of twenty-one years to have one-half of the property, and at the

death of the said Sarah J. the remainder." The widow had a posthumous child born a few weeks after testator's death. This child lived to be over twenty-one and clearly became entitled to one-half of the fund. The will further provides that "if at the death of my wife Sarah J. there should be no heirs of my body living, that I bequeath the proceeds of the real estate to Nathan Emmet Hulse and Charles S. Hulse (equally), sons of my brother Silas Hulse." Nathan Emmet Hulse died before the testator's child did, and there are presented two questions:

Did testator's child take a vested estate when he became twenty-one in any part of the fund, and, if so, in what part?

Did Nathan Emmet Hulse take anything under the will, his death having occurred while testator's son was living and before the widow's death? The testator never anticipated the state of facts which existed at the death of his widow. If the testator had a child he intended that child to take his property entirely, one-half at the age of twenty-one and the remaining half at his mother's death. He did not survive his mother, but there is nothing in the language which postpones the vesting of the entire estate a moment beyond the age of twenty-one years. If it were not for the words of bequest to the nephews the whole estate would belong to the son, possession only postponed as to one-half to the time of the death of the mother. I am inclined to think that the son took all, notwithstanding the bequest over in case "there should be no heirs of my body living" at his widow's death. The two bequests cannot stand entirely. If the son gets half the nephew cannot get the whole at the widow's death, unless there was no son who reached the age of twenty-one years. There was such a son and he did arrive at that age. The gift to the son is absolute, partly in fact delivered in possession. There are no words indicating an intent to reduce the gift to a life estate. No bequest over is made, except in default of heirs of his body. There is, therefore, no reason to believe that, if the testator had a child reach twenty-one years of age, he did not intend to give him the whole estate. The bequest over is of the whole estate, and one of the nephews died before testator's child. He took nothing, for two reasons: First. The testator's child had a fee liable to be divested by death it is true, but was not so divested at the death of the nephew. The child of the testator must die, and the

widow also, before this deceased nephew could take. Neither contingency happened. A legacy can lapse when it is not vested by reason of the death of the legatee, even after the testator's death. Nathan Emmet Hulse had no interest in the estate of the deceased, and the petition was, therefore, properly dismissed.

The judgment of the surrogate should be affirmed, with costs.

DYKMAN and PRATT, JJ., concurred.

Order of surrogate affirmed, with costs.